**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **TRUIST BANK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:21-cv-00190-REW-MAS |
| ) | |
| **AGTECH SCIENTIFIC GROUP, LLC,** ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the motion of Receiver Aurora Management Partners, Inc. (hereinafter "Receiver" or "Aurora") for entry of an order approving the sale of real property situated at 1077 Cane Ridge Road, Paris, Kentucky, together with personal property there located, free and clear of liens, claims, and encumbrances. [DE 111]. Presiding District Judge Robert E. Wier previously granted Aurora's request for an evidentiary hearing concerning the sale approval [DE 89] and referred this matter to the undersigned to conduct such a hearing (and any others warranted) as a part of managing the sale approval process. [DE 104]. The DE 111 motion has been fully briefed, and the undersigned conducted an evidentiary hearing on February 22, 2022, where the Court heard live witness testimony and received several documentary exhibits in support of the motion. [DE 140, 141].[1]

---

[1] The Court has ordered a formal transcript of the proceeding to ensure a complete record in this matter for any appellate or other later review. Such transcript is unlikely to be completed at the time of ultimate DE 111 resolution given the substantially expedited recommendation and objection timelines. However, transcript filing is unlikely to impact or delay the (time-sensitive) sale approval in this matter, as the hearing testimony was fully consistent with the written record

1

Being sufficiently advised, the Court issues this Report and Recommendation on the DE 111 motion to summarize the relevant factual and procedural progression, to discuss the proof and law applicable to the sale approval determination, and to ultimately recommend proposed findings of fact and conclusions of law that support granting the Receiver's motion on the terms here outlined. All involved parties have consented to a shortened objection period of five days. Upon filing of any objections or upon expiration of the deadline without filing of the same, the DE 111 matter shall be submitted to Judge Wier for consideration.[2]

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Truist Bank ("Truist") initiated this action in July 2021, alleging that Defendant AgTech Scientific Group, LLC ("AgTech Scientific")—then experiencing insolvency and undergoing related restructuring—had defaulted on multiple loan obligations. [DE 1 (Complaint)]. Truist named as Co-Defendants several entities under the AgTech Scientific umbrella (hereinafter the "AgTech Companies") as well as VWD Holdings, LLC ("VWD"), all guarantors on the various AgTech Scientific obligations to Truist. Of particular relevance to the sale approval issue at hand is Defendant Color Point, LLC ("Color Point"), one of the AgTech Companies and owner/operator of the real property located at 1077 Cane Ridge Road, Paris, Bourbon County, Kentucky 40361 (the "Cane Ridge Road Property"). [*See* DE 1-7 (Color Point Mortgage); *see also* DE 1-8 (Color Point Assignment to Truist)].

---

and documentary exhibits offered at the hearing, and no parties objected to or in any manner challenged the testimony presented. Such testimony, though important to authenticate, substantiate, and further explain the documentary evidence in support of the sale process and result, does not relate to any disputed factual or legal issue underpinning sale approval.

[2] As stated during the DE 111 evidentiary hearing, the undersigned will issue a separate, subsequent recommendation concerning the DE 115 motion for sale of personal property, on the briefs and without need for a hearing. The parties endorsed such an approach. [DE 140].

Concurrent with filing the Complaint, Truist sought emergency appointment of a receiver for the Color Point and other AgTech Scientific properties, including the Cane Ridge Road Property. [DE 2]. On August 4, 2021, Judge Wier conducted an evidentiary hearing and granted receiver appointment subject to later formal order entry. [DE 30]. After additional party input, the Court entered a receiver appointment order outlining the parameters of the arrangement and designating Aurora as Receiver. [DE 40]. The Court subsequently altered some of the receivership mechanics and, on August 23, 2021, entered an Amended Receivership Order, again with Aurora as Receiver. [DE 45]. That Amended Receivership Order remains operative.[3] Among other things, it authorized Aurora "[t]o market or engage a reputable brokerage company (including firms affiliated with Receiver) to market the Property for sale and/or lease and, subject to obtaining approval of the Court, sell the Property." [DE 45 ¶ 3(h)]. Such "Property" comprised all Color Point property, AgTech property, and collateral, including the Cane Ridge Road Property at issue in DE 111. [*Id.* ¶ 2]. The Order further vested Aurora with exclusive standing to exercise all authority of the AgTech Companies' board of directors, to include execution of any documents or other instruments in connection with the necessary sales. [*Id.* ¶ 10].

On December 20, 2021, Aurora filed a notice of entry into a stalking-horse contract with Howe Holdings, Inc. ("Howe") for sale of the Cane Ridge Road Property and requested that this Court set an evidentiary hearing to occur on or after February 10, 2022, to approve the ultimate sale to the winning bidder. [DE 89]. Judge Wier subsequently granted the request insofar as it sought a hearing and referred the matter to the undersigned to manage the sale approval processes.

---

[3] VWD's motion to clarify the Amended Receivership Order is pending and is outside of the referral scope. [DE 59]. As confirmed by the information presented at the DE 111 hearing, that motion, which addresses issues related to income (not real property) tax obligations, does not meaningfully impact the DE 111 relief request or preclude sale approval.

3

[DE 104]. Judge Wier likewise referred various intervention motions from other AgTech creditors. [*Id.*]. The Court permitted several interested groups to intervene based on alleged distinct interests in the property subject to this receivership: (1) the Paris-Bourbon County Economic Development Authority ("PBCEDA"), based on an interest in industrial equipment and property purchased with state grant money; (2) Enhanced Pet Sciences, Corp. ("EPS"), the AgTech entities' parent company, based on a general interest in the AgTech family of assets overall; and (3) four entities with asserted mechanic's liens against the Cane Ridge Road Property—Quality Plus Services, Inc. ("QPS"), Centrex Technical Sales, LLC ("Centrex"), Precision Solutions, Inc. ("Precision"), and Halder Process Solutions, LLC ("Halder"). [DE 85, 90, 93, 95, 105, 117, 121, 122, 127].

The Court further ordered briefing on the DE 111 motion for sale of the Cane Ridge Road Property, directing the parties' specific input on the sale terms, and scheduled an evidentiary hearing concerning sale approval. [DE 117]. Truist responded in full support of the sale approval motion. [DE 128]. The parties with mechanic's liens jointly responded. The parties did not object to the sale or its terms or dispute the fair value of the bids. However, these parties did object to the proposed automatic distribution of the net sale proceeds to Truist at closing, seeking as a predicate an accounting of the proceeds and the sums actually owed to Truist and a Court order directing disbursement. [DE 129]. EPS's and VWD's respective responses mirrored the mechanic's lienholders' positions. [DE 130, 131].[4] Aurora and Truist each replied in support of sale approval. [DE 136, 138].

The Court held a hearing on February 22, 2022. Counsel for Truist, VWD, Receiver, Centrex, Halder, QPS, Precision, and EPS appeared and participated. [DE 140]. Aurora presented

---

[4] EPS also objected to the sale to the extent it covered certain hemp biomass on the Cane Ridge Road Property, but the remainder of the briefing and hearing statements confirmed that such material is not a part of the proposed sale.

4

evidence supporting approval of the proposed sale to the winning bidder and, should that fail, to the backup bidder. The Court heard testimony from Laura Kendall, Senior Managing Partner of Aurora, and Mike Matlat, Senior Management Director A&G Realty Partners, LLC, the broker enlisted by Aurora (the "Broker" or "A&G"). [DE 141]. The Court also received several documentary exhibits supporting the factual findings and legal conclusions underlying sale approval. [*Id.*].

With the record fully developed as to the relevant facts and issues, the Court discusses the evidence supporting sale approval and recommends specific terms governing the sale process.

## II.     DISCUSSION

The sale of the realty and personalty in this case is governed by 28 U.S.C. § 2001, *et seq.* Under those provisions, "[p]roperty in the possession of a receiver . . . shall be sold at public sale in the district wherein any such receiver was first appointed," unless the Court directs that the sale occurs elsewhere. 28 U.S.C. §§ 2001(a). "Such sale shall be upon such terms and conditions as the court directs." *Id.*; 28 U.S.C. § 2004 (applying § 2001 to personalty unless otherwise ordered).

Because the proposed Cane Ridge Road Property sale was public rather than private, it falls under § 2001(a) only and need not meet the more stringent § 2001(b) requirements for private sales. *See also United States v. Scherer*, 532 F. Supp. 3d 485, 489 (S.D. Ohio 2021), *reconsideration denied*, No. 2:19-CV-03634, 2021 WL 2808726 (S.D. Ohio July 6, 2021). However, to comply with the statutory scheme, the public sale still requires "notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated." 28 U.S.C. § 2002.

The public sale process in this case complied with the above requirements and was fair and reasonable under the circumstances. As noted, the Receiver had full authority to market the

property, facilitate a sale, and execute the related documents on the AgTech Companies' behalf. [DE 45 ¶¶ 3(h), 10]. Based on the evidence before the Court and the lack of contrary argument, the Receiver acted within the scope of its DE 45 authority throughout the entire sale process and in good faith compliance with the Amended Receivership Order's terms. The record further confirms that there are sound business reasons for the proposed sale generally, and the sale is undoubtedly in the AgTech Companies' best interest (given their insolvency), the Receivership posture, and the limited, dwindling credit from Truist that continues to maintain the property.

As DE 45 directs, Aurora engaged an experienced, reputable broker (A&G) to market the property. [DE 111 at Page ID # 1266; DE 141, Hearing Ex. 8 (outlining A&G's experience & qualifications); *id.*, Ex. 9 (Matlat Bio)]. The Broker conducted a thorough, robust, and successful marketing campaign for the Cane Ridge Road Property, as outlined in Exhibit 10 and consistent with Mr. Matlat's testimony at the approval hearing. [DE 141, Ex. 10 (Marketing Campaign Summary)]. No party challenged the Broker's role or efforts in the marketing and sale process. The Broker coordinated a series of brochure and offering memoranda, targeted email blasts, press releases, and combined online and print ads over the course of several weeks to generate interest in the property. [*Id.*].

Based on the advertising outlined in Exhibit 10 and as otherwise confirmed in the briefing and per Mr. Matlat's hearing testimony, the Receiver amply complied with (and exceeded) the notice and marketing requirements of § 2002. Such efforts resulted in a sizeable stalking-horse bid for the property that no party challenged as unfair or unreasonable; indeed, the process and terms of the stalking-horse contract and its value appear wholly reasonable and appropriate based on the evidence before the Court. [DE 88 (Notice); DE 88-1 (Stalking-Horse Contract with Howe)]. This agreement, providing for a purchase price of $22,500,000.00, was subject to receipt

of later higher and better bids, and the Receiver so advertised to solicit competing bids for the public auction. [*See also id.*, Ex. 11 (Notice of Receiver Sale and Stalking-Horse Bid)]. Ultimately, the Receiver obtained a qualified overbid from Central Garden & Pet Company ("Central Garden") prior to the action.

The § 2001(a) public auction requirements are likewise satisfied on this record. A public auction occurred on February 3, 2022, at the law office of Truist's counsel, Dinsmore & Shohl LLP, located at City Center, 100 West Main Street, Suite 900, Lexington, KY 40507. [DE 136 at Page ID # 1431]. As this location is in the Eastern District of Kentucky, where the Receiver has been appointed in this matter, it satisfies § 2001(a). *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (explaining the importance of the "require[ment] that the property be sold within a reasonable distance of where the property is located in order to bring a better price at the sale"). All interested parties received notice of the sale and participated to the extent desired; parties were permitted to attend remotely as needed. [*Id.*]. The participants were representatives and counsel for Truist, the Receiver, and the two qualified bidders, Central Garden and Howe. Per the DE 136 factual narrative and Mr. Matlat's testimony, Howe opened the auction with an initial bid of $25,000,000, with Central Garden following at $26,000,000, and the bids increasing in $1,000,000 increments until Howe capped its bid at $33,000,000 (hereinafter the "Backup Bid(der)") and Central Garden ultimately outbid Howe with $34,000,000 (hereinafter the "Winning Bid(der)").

No party challenged this characterization of events, and all parties have agreed that the sale process was fair and reasonable and that the record is devoid of evidence of price maneuvering or similar bad faith conduct. Rather, all involved (including the Receiver, the Broker, and all other participants) acted in good faith, within the applicable receivership scope, and in a commercially

7

reasonable manner in conducting the sale. Moreover, critically, the Winning Bid and Backup Bid sale prices and agreements represent fair values for the Cane Ridge Road Property, and Central Garden and Howe are both good faith purchasers for value. [DE 141, Ex. 1 (Executed Central Garden Asset Purchase Agreement), Ex. 2 (Unexecuted Howe Asset Purchase Agreement)]. At the hearing, Mr. Matlat specifically testified that, in his professional opinion as a part of the Broker's team, both bids represent fair value for the property and the entire sale process was commercially reasonable and, indeed, successful. Mr. Matlat opined that the addition of Central Garden's competing bids contributed to a result even better than expected, to the benefit of all AgTech creditors. Again, no party has argued or shown otherwise.

For all of these reasons, given the extent of detailed evidence in support of DE 111 and the Receiver's demonstrated, thorough, and (as all agree) successful sale efforts, the record justifies granting the motion and making the sale approval findings outlined in the following Section. Further, as the briefing and party positions at the hearing reflect, the parties largely agreed on the sale terms and language proposed by the Receiver in DE 111-5. [*See also* DE 117 at Page ID # 1355 (directing that the parties' responses to the sale motion should "address both the predicate sale standards, as discussed in detail in the DE 111 motion, and the party's position on the specific sale terms, as proposed in DE 111-5)[.]"]. The Court thus adopts them in substantial part, as reflected below. *See* 28 U.S.C. § 2001(a) (providing that the Court must set the sale terms and conditions).

However, in accordance with its § 2001(a) power, the undersigned will recommend that Judge Wier slightly alter the Receiver's and Truist's proposal to distribute the net sale proceeds to Truist directly, automatically at closing and without further accounting or order. Instead, the more measured and equitable course under the circumstances would be to direct that the proceeds remain

8

with the Receiver, in escrow, pending delivery of an accounting to all interested parties and a subsequent Court directive authorizing distribution of the funds on appropriate terms. Such accounting should, at a minimum, reflect the total proceeds earned from the sale, the various fees taken from it pursuant to the receivership arrangement (including the Receiver's fee, Broker's fee, etc.), resulting net proceeds for distribution, and some documentation of the total sums actually owed to Truist under the various obligations and relevant legal standards. [*See, e.g.*, DE 129 at Page ID # 1396 (explaining the Intervenors' desire for a documented accounting and quoting *Percy Galbreath & Son, Inc. v. Watkins*, 560 S.W.2d 239, 241 (Ky. Ct App. 1977), for the proposition that "the lender has a first and superior lien where the mortgage is recorded prior to the commencement of labor or furnishing of materials only to the extent of the sums advanced prior to default")]. Though VWD and the Intervenors do not dispute Truist's lien priority, even absent such a priority challenge, they fairly seek a formal, final accounting of the proceeds, fees taken there from, and the amounts actually owed to Truist under the various loan obligations prior to distribution in order to appropriately protect their clients' interests. Given the several and varied tangentially interested parties in the AgTech property overall and the Cane Ridge Road Property specifically, as well as the scope and monetary value of this sale, such formal documentation of the net proceeds in relation to the sums owed to Truist is appropriate prior to final distribution.[5] Nor would such a practice in this case delay the actual sale approval or closing, so there would be negligible prejudice to any party. Accordingly, the balance of relevant interests and the sale circumstances here favor retaining the money in the Receiver's escrow pending a final accounting,

---

[5] The parties in fact largely seem to agree that the net proceeds from the sale may not fully compensate Truist; nonetheless, even without expected objections to the ultimate accounting and proposed distribution, the interested parties are reasonably entitled to documentation of the same to ensure that they are able to fully apprise their clients of the sale outcome and circumstances.

resolution of any expedited objections thereto, and a Court order directing final distribution on appropriate terms. The undersigned recommends a procedure consistent with those goals. Such a proposed procedure does not impact or alter the recommendation that the District Judge fully approve the Cane Ridge Road Property sale itself free of all liens, claims, and encumbrances.

### III.    RECOMMENDED FINDINGS AND CONCLUSIONS[6]

Based on the facts and evidence discussed above, the Court **RECOMMENDS** that Judge Wier **FIND** as follows:

1. For the reasons set forth in DE 111, there are good, valid, and sound business reasons for the sale of the Cane Ridge Road Property, and the sale has been conducted in compliance with 28 U.S.C. §§ 2001, 2002, and 2004.

2. The sale of the Cane Ridge Road Property is in the best interest of creditors and the Receivership estate.

3. The sale of the Cane Ridge Road Property was conducted with extensive marketing and publicity and in a manner that was commercially reasonable.

4. Reasonable and sufficient notice of the Sale Motion was provided to all of the Defendants, all creditors asserting an interest in the Cane Ridge Road Property, and other parties in interest who have requested notices in this Receivership case.

5. Due and proper notice of the auction for the sale of the Cane Ridge Road Property, held on February 3, 2022 (the "Auction") was provided to all creditors asserting an interest in the Cane Ridge Road Property and other parties in interest who requested notices in this Receivership case, and by sufficient publication in accordance with 28 U.S.C. § 2002.

6. At the conclusion of the Auction, Central Garden, the Winning Bidder, was selected by the Receiver as having made the highest and best bid on terms acceptable to the Receiver. A copy of the Asset Purchase Agreement signed by the Winning Bidder has been filed with the Court as Exhibit 1, *see* DE 141, to the evidentiary hearing record.

7. The record further establishes that the Winning Bidder is a good faith purchaser for value and that the consideration to be paid for the Cane Ridge Road Property is fair and reasonable and consistent with the fair value of the Cane Ridge Road Property.

---

[6] Terms not defined in this Section or elsewhere in this Report and Recommendation shall have the meaning ascribed to them in the DE 111 sale motion.

8. The sale of the Cane Ridge Road Property was conducted pursuant to a fair and equitable public sale process, which culminated in a sale to a financially qualified Winning Bidder interested in purchasing the Cane Ridge Road Property, the public having been given a full and fair opportunity to submit bids for the Cane Ridge Road Property.

9. The Receiver and the Winning Bidder have at all times acted in good faith and in accordance with applicable law. There has been no evidence presented to this Court that the sale price was controlled by any agreement among potential bidders or that any prohibited activity has occurred.

10. The Receiver complied with the requirements of the Appointment Order and 28 U.S.C. § 2001, *et seq.* in all material respects, and the proposed DE 111 sale merits approval.

11. The Receiver has the full authority and power to execute and deliver the Winning Bid Agreement and related agreements and all other documents contemplated to perform Seller's obligations thereunder, to consummate the transactions contemplated thereby and the sale of the Cane Ridge Road Property has been duly and validly authorized by all necessary action. No other consents or approvals are necessary or required for Receiver to enter into the Winning Bid Agreement, perform its obligations thereunder and consummate the transactions contemplated thereby.

12. In the event that the Winning Bidder were to fail to close in accordance with the terms of the Winning Bid Agreement, the Receiver shall have the full authority and power to execute and deliver the Asset Purchase Agreement submitted by Howe, the Backup Bidder, which the Receiver determined at the Auction was the second highest and best bid (the "Backup Bid Agreement") and related agreements and all other documents contemplated to perform its obligations thereunder, to consummate the transactions contemplated thereby. No other consents or approvals are necessary or required for Receiver to enter into the Backup Bid Agreement, perform its obligations thereunder and consummate the transactions contemplated thereby, in the event that the Winning Bidder were to fail to close under the Winning Bid Agreement. The Receiver and the Backup Bidder have at all times acted in good faith and in accordance with applicable law.

Based on these recommended findings, the Court further **RECOMMENDS** that Judge Wier **GRANT** DE 111 and **ENTER** an order of sale to include the following or similar terms (that substantially track the chiefly unopposed DE 111-5 conditions):

1. This Court has jurisdiction over the DE 111 Sale Motion pursuant to 28 U.S.C. § 1331. Venue of this proceeding and the Sale Motion is proper in this judicial district pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief sought herein is 28 U.S.C. § 2001, *et seq.*

2. The relief sought in the Sale Motion is fully justified pursuant to 28 U.S.C. §§ 2001, 2002, and 2004 and the Appointment Order.

3. The transfer of the Cane Ridge Road Property to the Winning Bidder will be a legal, valid, and effective transfer. The Cane Ridge Road Property shall be sold and assigned to the Winning Bidder at the Closing, free and clear of all liens, claims and encumbrances of any kind or nature including, but not limited to, any lien (statutory or otherwise), hypothecation, encumbrance, liability, security interest, contract rights, interest, mortgage, security agreement, and tax including, but not limited to, (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claim based on any theory that the Winning Bidder is a successor, transferee or continuation of any of the AgTech Companies, and (iv) any leasehold interest, license or other right, in favor of a third party or the AgTech Companies, to use any portion of the Cane Ridge Road Property, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown (referred to collectively hereinafter as the "Liens and Claims").

4. The Winning Bid Agreement, and subject to the failure of the Winning Bidder to close as agreed, the Backup Bid Agreement, and each of the terms thereof and the transactions contemplated thereby, are each hereby APPROVED. The Receiver is authorized and directed to execute and deliver such other documents and take such other actions as may be necessary, desirable or appropriate to effect, implement, and/or consummate the sale of the Cane Ridge Road Property to the Winning Bidder and all other transactions described in the Winning Bid Agreement without further application to or Order of this Court.

5. Effective upon Closing, all parties and/or entities asserting or who may assert Liens and Claims against the AgTech Companies are hereby permanently enjoined and precluded, with respect to such Liens and Claims, from: (i) asserting, commencing or continuing in any manner any action against the Winning Bidder (or the Backup Bidder if it were to end up closing due to the Winning Bidder's failure to close) with respect to the Cane Ridge Road Property and (ii) attempting to enforce any Liens and Claims of any kind against the Cane Ridge Road Property.

6. The provisions of this Order authorizing the sale of the Cane Ridge Road Property free and clear of Liens and Claims shall be self-executing, and neither the AgTech Companies, the Receiver, nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale. Without in any way limiting the foregoing, the Winning Bidder (or if applicable, the Backup Bidder) and the Receiver each is hereby empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

7. This Order shall be binding upon, and shall inure to the benefit of, the AgTech Companies, the Receiver and the Winning Bidder (or the Backup Bidder, if applicable) and their respective successors and assigns. The failure specifically to include any particular provisions of the Winning Bid Agreement or the Backup Bid Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that every provision, term, and condition thereof be and therefore is, authorized and approved in its entirety.

8. The Court shall retain jurisdiction over the AgTech Companies, the Receiver, the Winning Bidder, the Back-up Bidder, and all parties asserting Liens and Claims and contract rights on or in the Cane Ridge Road Property to implement, interpret, consummate and/or effectuate the provisions of this Order, the Winning Bid Agreement, and all agreements arising out of, related to, or approved pursuant to this Order.

9. Any and all governmental recording offices and all other parties, persons or entities are directed to accept this Order for recordation on or after the Closing as conclusive evidence of the free and clear, unencumbered transfer of title to the real property included in the Cane Ridge Road Property conveyed to the Winning Bidder (or the Backup Bidder, if applicable) at the Closing.

10. Within ten (10) days of Closing, the Receiver shall file in the docket for this case and provide to all interested parties a written accounting of the proceeds from the Cane Ridge Road Property sale, the costs and fees taken therefrom (including all closing costs, the obligations to be paid by the Seller under the Winning Bid Agreement, and the fees due to be paid to the Broker and to the Receiver), the resulting net proceeds from the sale, and the sums actually owed to Truist under the relevant loan and other agreements and per the applicable legal standards. Any party may challenge the accounting or object to the proposed net distribution to Truist within ten (10) days of its filing. Upon receipt of such objections or upon expiration of the deadline for so filing, the Court will evaluate and resolve any lingering issues, directing further briefing if and as needed, and order prompt final distribution of the net sale proceeds in an appropriate manner.

11. The reversal or modification of this Order on appeal shall not affect the validity of the transfer of the Cane Ridge Road Property to the Winning Bidder (or the Backup Bidder, if applicable) unless the transfer is stayed pending appeal prior to Closing.

12. This Order shall be effective immediately upon entry

## IV.   RIGHT TO REVIEW

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. *See also* Fed. R. Civ. P. 72(b). Given the time-sensitivity of the sale approval question, in light of the receivership and the AgTech

Companies' insolvency, the parties readily consented to a shortened five-day objection period. Accordingly, within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. In order to ensure timely and efficient presentation of all DE 111 issues to Judge Wier upon review of this Report and Recommendation, any responses/objections to it should specifically include any suggested alternative terms or phrasing for the final sale order.

Entered this the 25th day of February, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge