UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **TRUIST BANK,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 5:21-cv-00190-REW-MAS |
| ) | |
| **AGTECH SCIENTIFIC GROUP, LLC,** ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the motion of Receiver Aurora Management Partners, Inc. (hereinafter "Receiver" or "Aurora") for entry of an order approving the sale of certain personal property of limited value free and clear of liens, claims, and encumbrances. [DE 115]. Presiding District Judge Robert E. Wier referred this case to the undersigned for management of the sale approval process, to include issuing appropriate reports and recommendations on dispositive matters. [DE 104]. For the reasons and on the terms outlined below, the Court recommends substantially granting DE 115 and approving the personal property sales as proposed.

**I.   RELEVANT BACKGROUND**

The Court fully set forth the facts and procedural history of this case in its DE 142 Report and Recommendation concerning the Cane Ridge Road real property sale and here summarizes the relevant events. Plaintiff Truist Bank ("Truist") initiated this action in July 2021, alleging that Defendant AgTech Scientific Group, LLC ("AgTech Scientific"), in insolvency, had defaulted on multiple loan obligations. [DE 1 (Complaint)]. Truist named as Co-Defendants several entities

1

under the AgTech Scientific umbrella (hereinafter the "AgTech Companies") as well as VWD Holdings, LLC ("VWD"), all guarantors on the various AgTech Scientific obligations to Truist. Truist sought emergency appointment of a receiver for all AgTech Scientific property, including two real property parcels located at 1077 Cane Ridge Road (the "Cane Ridge Road Property") and 333 Cleveland Drive (the "Cleveland Drive Property") in Paris, Kentucky, respectively, and assorted personal property of varying values. [DE 2]. After an evidentiary hearing and full briefing, Judge Wier entered a receiver appointment order [DE 30, 40]; he subsequently amended its terms slightly, resulting in the currently operative Amended Receivership Order [DE 45] designating Aurora as Receiver.[1]

Among other things, the Amended Receivership Order authorized Aurora "[t]o market or engage a reputable brokerage company (including firms affiliated with Receiver) to market the Property for sale and/or lease and, subject to obtaining approval of the Court, sell the Property." [DE 45 ¶ 3(h)]. Such "Property" comprised all AgTech real and personal property. [*Id.* ¶ 2]. The Order further vested Aurora with exclusive standing to exercise all authority of the AgTech Companies' board of directors, to include execution of any documents or other instruments in connection with the necessary sales. [*Id.* ¶ 10]. Pursuant to and consistent with the Amended Receivership Order, Aurora filed its Defendant-approved Plan for Disposition of Assets (the "Plan") [DE 62], outlining its proposed disposition of all AgTech property, including the real property and certain inventory. The Receiver Plan for Disposition of Assets explicitly stated Aurora's belief, based on initial market research and findings, that the AgTech businesses would

---

[1] VWD's pending motion to clarify the Amended Receivership Order is outside of the referral scope and does not preclude the at-issue sale approval. [DE 59].

not be able to be sold as going concerns and that individual sales of the assets would obtain the greatest value for AgTech creditors. [*Id.*].

As this litigation progressed, the Court permitted several interested groups to intervene based on unique interests in the property subject to this receivership: (1) the Paris-Bourbon County Economic Development Authority ("PBCEDA"), based on an interest in industrial equipment and property purchased with state grant money; (2) Enhanced Pet Sciences, Corp. ("EPS"), the AgTech entities' parent company, based on a general interest in the AgTech family of assets overall; and (3) four entities with asserted mechanic's liens against the Cane Ridge Road Property—Quality Plus Services, Inc. ("QPS"), Centrex Technical Sales, LLC ("Centrex"), Precision Solutions, Inc. ("Precision"), and Halder Process Solutions, LLC ("Halder"). [DE 85, 90, 93, 95, 105, 117, 121, 122, 127]. The Court has permitted all such parties to respond to the DE 115 personal property motion as desired. [DE 117].

The instant motion specifically pertains to miscellaneous vehicles, equipment, furniture, computers, and other personal property, including hemp processing equipment, owned by the AgTech Companies and located at the Cleveland Drive Property. [DE 115]. This limited-value personal property (hereinafter the "Limited Value Assets") is not needed for ongoing operation of the Cleveland Drive Property. [*Id.* at Page ID # 1327]. The Limited Value Assets do not include the equipment owned by Maratek Environmental Inc. and subject to the previous Agreed Order in this case. [*See* DE 76, 95, 107]. Nor do they include any property specifically held as collateral for the PBCEDA loan to AgTech.

Aurora proposes to privately and/or publicly sell the various assets piecemeal to purchasers as they arise and requests the ability to do so without further Court order up to $400,000, maintaining that such an efficient process will best maximize the proceeds for AgTech creditors.

However, EPS and the PBCEDA have objected to a pre-authorized sale process and would request Court approval for each of the sought personal property sales. [DE 132 (EPS Response), 134 (PBCEDA Response)]. EPS and the PBCEDA do not claim specific interests in the Limited Value Assets; rather, they claim general interests in the proceeds of the Limited Value Assets' sales as AgTech creditors. To that end, these entities further request that the proceeds remain with the Receiver pending an accounting of sums owed under the various competing AgTech obligations. No other party opposes the suggested sale mechanics for the Limited Value Assets.[2] Truist, the AgTech Companies' largest secured creditor, and Aurora each further responded and/or replied in full support of the motion. [DE 133, 137, 143].

Thus, the DE 115 motion is fully briefed and ripe for consideration. The Court discusses and recommends resolution of each issue as reflected below. Given the time-sensitivity of the sale approval and the Receiver's intent that final disposition of the Limited Value Assets precede or coincide with eventual Cleveland Drive Property closing, the parties have consented to a five-day objection period. [DE 140].

## II.  DISCUSSION

The sale of property in this case is governed by 28 U.S.C. § 2001, *et seq.* Under those provisions, real "[p]roperty in the possession of a receiver . . . shall be sold at public sale in the district wherein any such receiver was first appointed," unless the Court directs that the sale occur elsewhere. 28 U.S.C. §§ 2001(a). "Such sale shall be upon such terms and conditions as the court directs." *Id.* Much more stringent requirements pertain to private sales of real property. *Id.* § 2001(b). The § 2001 parameters apply to sales of personal property "unless the court orders otherwise." 28 U.S.C. § 2004. Section 2004 thus affords courts important flexibility in

---

[2] Defendant VWD initially objected but has since withdrawn its objection. [DE 135, 139].

administering federal receiverships, permitting them discretion in handling disposition of personal property in a manner most efficient and consistent with the purposes of the receivership. *See also Tanzer v. Huffines*, 412 F.2d 221, 222 (3d Cir. 1969) (finding that the district court did not abuse its discretion in approving stock sales outside of the § 2001 framework); *United States v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996) (emphasizing that it was "at the district court's discretion whether to obtain appraisals" and take the other § 2001(b) steps "before foreclosing upon personal property").

Aurora maintains that permitting it to handle sales of the Limited Value Assets as they arise and can be completed, without need for a motion, briefing, and Court order on each occasion, would maximize the Receivership's resources and minimize delay and unnecessary operating costs. EPS and the PBCEDA challenge the Limited Value Assets' sales insofar as Aurora seeks advance authorization without Court approval for the same. As the Receiver observes, EPS's and the PBCEDA's objections to pre-authorization of these Limited Value Asset sales largely amount to challenges to the Receiver's business judgment in arranging the contemplated sales. In each respect, however, the record firmly demonstrates the Receiver's sound business judgment in handling the sale processes and confirms them to be consistent with the Plan and the Amended Receivership Order. The Court thus recommends that Judge Wier overrule the objections to the proposed sale mechanics and permit the sales of the Limited Value Assets to go forward without individual approval orders up to $400,000.[3]

---

[3] Of course, the $400,000 advance approval cap may not incentivize lower individual sales in order to remain collectively below the limit and avoid seeking further authorization. Such a dynamic would be inconsistent with the Receiver's duties under the Amended Receivership Order and with § 2001. *See* 28 U.S.C. § 2001(b) (requiring that private sales be in "the best interests of the estate" as a predicate to approval). The Court trusts that Aurora, as it has to date, would conduct the proposed sales within the scope of its duties as Receiver and within the sprit of the applicable law, including §§ 2001 and 2004; no information in the record would indicate otherwise.

First, EPS challenges the transparency of the personal property sale processes, in particular a recent sale of hemp processing equipment on which EPS was outbid. EPS contends that, despite being offered a right of first refusal, it lost out to a slightly higher bidder in a blind auction. It contends that this situation illustrates the Receiver's failure to conduct auctions and sales in a manner that maximizes proceeds for the AgTech creditors. However, EPS does not submit any concrete evidence substantiating a right of first refusal that was not honored by the Receiver and, indeed, the communications referenced by the Receiver in connection with this sale would indicate otherwise. [DE 143-1, 143-2]. There is no credible evidence of bad faith or unmet obligations on the Receiver's part in connection with this particular or any other personal property sale.

Further, to the extent EPS simply recommends that the Receiver use different auction protocol to maximize proceeds, EPS may not substitute its business judgment for the Receiver's at this late stage. Judge Wier appointed Aurora as Receiver after establishing its expertise and qualifications for the role, as documented throughout this record; Aurora is vested with discretion and authority per the Amended Receivership Order and the Plan to market and sell the various AgTech property in accordance with its demonstrated expertise in such matters. There is no proof in the record indicating that Aurora has failed to comply either with the Amended Receivership Order or the Plan in this context or that its marketing and sale methods have not been reasonable or in the AgTech estate's best interests. In any event, as the Receiver observes, given the costs associated with public auctions, such a process would doubtfully have produced a greater net benefit even if EPS's marginally higher bid had ultimately succeeded. EPS's challenge thus does not cast doubt on the adequacy of the Receiver's sale processes overall or justify rejection of the DE 115 authorization request.

Second, and in the same vein as EPS's objection, the PBCEDA broadly challenges the Receiver's decision to sell the AgTech property as individual assets (both personal and real), rather than as going-concern businesses. The Plan, however—previously approved by Truist and the Defendants in this case—expressly discusses and supports Aurora's bases for concluding, after significant market research conducted based on its relevant expertise, that individual rather than going-concern sales would maximize the proceeds for creditors in this case. [DE 62, 63]. That Truist, the largest secured creditor, does not object to this process further indicates its reasonableness in this context and market. Aurora has consistently acted within the scope of its duties as imposed by the Amended Receivership Order and by statute, and marketing and selling the various property in accordance with the Plan is both reasonable and, as many relevant parties then agreed, in the AgTech Companies' and their creditors' best interests. Accordingly, the PBCEDA's objection—functionally a late challenge to the entry and scope of the Amended Receivership Order and/or to the Plan insofar as it provides for separate sales, both since-resolved issues—is not material to the specific relief requested in DE 115 and should not prevent approval of the contemplated personal property sales in the manner suggested.

These examples of the Receiver's measured, research-supported business judgments, all made within the scope of its authority as granted by Judge Wier in this case, in fact further support the efficient plan for disposition of the Limited Value Assets proposed in DE 115. The Receiver has readily engaged a variety of marketing and sale efforts—public outcry auctions of combined real and personal property, public auctions of real property alone, blind auctions, and various other procedures for auctioning or arranging other private sales of individual personal property assets. These circumstance- and asset-specific approaches underscore the Receiver's commitment to obtaining the greatest value for creditors based on Aurora's valuable background knowledge of

market conditions and strategies. Moreover, the favorable result of the Cane Ridge Road Property sale confirms the Receiver's successful efforts. [*See* DE 111, 142]. All of these facts of record demonstrate the Receiver's reasonable and well-founded decisions concerning marketing and sale of the various AgTech properties and further support approving the reasonable plan for the Limited Value Assets proposed here.

Appropriate circumstances also exist to justify departing, in the District Judge's ultimate discretion, from the § 2001 notice, hearing, and approval requirements associated with each individual sale of the Limited Value Assets. Critically, as the record makes clear, arranging and completing these sales is time-sensitive; the Receiver reasonably hopes that the conclusion of these Limited Value Asset sales will coincide roughly with the closing on the Cleveland Drive Property[4] where they are located to avoid incurring additional storage and moving costs. As the Receiver and Truist note, limited, dwindling lines of credit continue to maintain the AgTech properties until final disposition. Implementation of a streamlined process for sale of the Limited Value Assets is thus essential, as any added steps necessarily add costs and delay and ultimately diminish the net proceeds available to the AgTech Companies' creditors. Further, the nature of the assets—industrial equipment, computers, some vehicles, etc.—and the corresponding likelihood of several separate sales to different small-value purchasers makes obtaining Court approval for each impracticable under the circumstances.

For these reasons, requiring strict adherence to the § 2001(a) and/or (b) requirements for the Limited Value Assets would impair the Receiver's practical ability to administer the receivership and dispose of all AgTech property and would diminish the overall value of the

---

[4] The Receiver's motion for approval of the sale of this property is pending and currently in briefing.

recovered proceeds, to the creditors' detriment. Conversely, the Receiver's proposal to dispense with the § 2001 requirements as to the Limited Value Assets and to sell them in the manner suggested reflects sound business judgment, is reasonable under the time-sensitive circumstances, and best furthers the purpose of the Amended Receivership Order and the goals in the Plan. *See, e.g.*, *United States v. Kerner*, No. 00-75370, 2003 WL 22905202, at *3 (E.D. Mich. Oct. 24, 2003) (finding that "dispensing with the advertising and sale expenses of a public auction" and other § 2001 requirements would best serve the relevant corporate creditors); *United States v. Scherer*, 532 F. Supp. 3d 485, 491 (S.D. Ohio 2021), *reconsideration denied*, No. 2:19-CV-03634, 2021 WL 2808726 (S.D. Ohio July 6, 2021) (exercising its discretion to sell personal property outside of the § 2001 framework where, among other things, the court was concerned about additional costs and time associated with approving individual piecemeal sales); *see also First National Bank of Pennsylvania, et al. v. Independence Lumber, Inc., et al.*, No. 1:20-cv-00637-WO-JEP, at E.C.F. No. 49 (Jan. 25, 2021) (approving procedures for pre-authorized sale of limited value assets similar to those Aurora here proposes).

The Court recommends that Judge Wier find that authorizing the Receiver to sell the Limited Value Assets as proposed in DE 115 is in the best interest of creditors, based on the Receiver's reasonable exercise of its business judgment. The Court further recommends that Judge Wier dispense with the formal § 2001 requirements and permit disposition of the Limited Value Assets by private sales in advance of any actual purchase agreement, to avoid the costs and delays that otherwise would be incurred for the sale of items of personal property of relatively low value.

However, as with the proceeds of the Cane Ridge Road Property sale, the Court recommends that Judge Wier direct the Receiver to maintain the proceeds of the Limited Value Assets' sales in its escrow account pending a full written accounting of items sold, prices received,

fees taken therefrom, and net proceeds as compared to the obligations owed to Truist. The Court would further recommend that such an accounting be due to all interested entities upon ultimate closing of the Cleveland Drive Property sale, if an as eventually approved, with an opportunity to lodge any relevant objections prior to final distribution of the Limited Value Assets and Cleveland Drive Property sale proceeds (with the matters timed to coincide to the extent possible). The intervening creditors in this case do not dispute Truist's lien priority. [*See* DE 45 at Page ID # 726 (explicitly contemplating that the proceeds obtained from the Receiver's activities will be applied toward the AgTech obligations owed to Truist)]. However, given the many parties involved and the varied and numerous characters of the Limited Value Assets, formal documentation of the net proceeds in relation to the sums owed to Truist is appropriate prior to final distribution. Nor would such a practice in this case delay the actual sale approval or closing on any of the Limited Value Assets, so there would be negligible prejudice to any party.

### III.  CONCLUSION

For the reasons here thoroughly discussed, the Court **RECOMMENDS** that Judge Wier **GRANT** DE 115 and enter an order pre-approving sale of the Limited Value Assets free and clear of all liens and encumbrances on substantially the same terms as proposed in DE 115-1, with the exception of the DE 115-1, ¶ 3 provision authorizing the Receiver to distribute the net proceeds of the sales of the Limited Value Assets directly to Truist. Rather, the Court recommends that Judge Wier direct that Aurora retain such proceeds in its escrow account pending a written accounting to all interested parties, opportunity to object as appropriate, and a final order of distribution, to temporally coincide with closing and/or final proceed distribution for the Cleveland Drive Property.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. *See also* Fed. R. Civ. P. 72(b). Given

the time-sensitivity of these sale approval questions, considering the receivership and the AgTech Companies' insolvency, the parties consented to a shortened five-day objection period. Accordingly, within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.

Entered this the 7th day of March, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge