**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | | |
|---|---|---|
| **TRUIST BANK,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 5:21-cv-00190-REW-MAS |
| **AGTECH SCIENTIFIC GROUP, LLC, et al.,** | ) ) ) ) | |
| Defendants. | ) ) ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the motion of Receiver Aurora Management Partners, Inc. (hereinafter "Receiver" or "Aurora") for entry of an order approving the sale of real property situated at 333 Cleveland Drive, Paris, Kentucky (the "Cleveland Drive Property"), free and clear of liens, claims, and encumbrances. [DE 145]. Presiding District Judge Robert E. Wier previously referred this and other matters to the undersigned to conduct hearings as appropriate and to manage the sale processes. [DE 104]. The DE 145 motion has been fully briefed, and the undersigned conducted an evidentiary hearing on March 21, 2022, where the Court heard live witness testimony and received several documentary exhibits in support of the motion. [DE 160, 161].[1]

---

[1] The Court has ordered a formal transcript of the proceeding to ensure a complete record for any appellate or other later review. Though such transcript is unlikely to be docketed in the record prior to this Report and Recommendation's submission to Judge Wier given the expedited timeline, it should not impact or delay the time-sensitive Cleveland Drive sale approval. As with the parallel DE 111 Cane Ridge Road sale process, the hearing testimony in this matter was fully consistent with the written record and documentary exhibits offered at the hearing, and no parties challenged the testimony presented. Such testimony, though important to authenticate, substantiate, and further explain the documentary evidence in support of the sale process and result, does not relate to any disputed factual or legal issue underpinning sale approval.

Being sufficiently advised, the Court issues this Report and Recommendation on the DE 145 motion to summarize the relevant factual and procedural progression, to discuss the proof and law applicable to the sale approval determination, and to ultimately recommend proposed findings of fact and conclusions of law that support granting the Receiver's motion on the terms here outlined. The parties have consented to a shortened objection period of five days. Upon filing of any objections or upon expiration of the deadline without filing of the same, the DE 145 matter shall be submitted to Judge Wier for consideration.

## I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Truist Bank ("Truist") initiated this action in July 2021, alleging that Defendant AgTech Scientific Group, LLC ("AgTech Scientific")—then experiencing insolvency and undergoing related restructuring—had defaulted on multiple loan obligations. [DE 1 (Complaint)]. Truist named as Co-Defendants several entities under the AgTech Scientific umbrella (hereinafter the "AgTech Companies") as well as VWD Holdings, LLC ("VWD"), all guarantors on the various AgTech Scientific obligations to Truist. Concurrent with filing the Complaint, Truist sought emergency appointment of a receiver for AgTech Scientific's property, including the Cane Ridge Road real property (the subject of the prior sale process) and the Cleveland Drive Property. [DE 3-2]. On August 4, 2021, Judge Wier conducted an evidentiary hearing and granted receiver appointment subject to later formal order entry. [DE 30].

After additional party input, the Court entered a receiver appointment order outlining the parameters of the arrangement and designating Aurora as Receiver. [DE 40]. The Court subsequently altered some of the receivership mechanics and, on August 23, 2021, entered an Amended Receivership Order, again with Aurora as Receiver. [DE 45]. That Amended

Receivership Order remains operative.[2]  Among other things, it authorized Aurora "[t]o market or engage a reputable brokerage company (including firms affiliated with Receiver) to market the Property for sale and/or lease and, subject to obtaining approval of the Court, sell the Property." [DE 45 ¶ 3(h)]. Such "Property" comprised all AgTech property and collateral, including the Cleveland Drive Property at issue in DE 145.  [*Id.* ¶ 2].  The Order further vested Aurora with exclusive standing to exercise all authority of the AgTech Companies' board of directors, to include execution of any documents or other instruments in connection with the necessary sales. [*Id.* ¶ 10].

After authorizing the receivership in this case, Judge Wier referred management of the sale processes to the undersigned, together with various intervention motions from other AgTech creditors. [DE 104].  The Court permitted several interested groups to intervene based on alleged distinct interests in the property subject to this receivership: (1) the Paris-Bourbon County Economic Development Authority ("PBCEDA"), based on an interest in industrial equipment and property purchased with state grant money; (2) Enhanced Pet Sciences, Corp. ("EPS"), the AgTech entities' parent company, based on a general interest in the AgTech family of assets overall; and (3) four entities with asserted mechanic's liens against the Cane Ridge Road Property—Quality Plus Services, Inc. ("QPS"), Centrex Technical Sales, LLC ("Centrex"), Precision Solutions, Inc. ("Precision"), and Halder Process Solutions, LLC ("Halder"). [DE 85, 90, 93, 95, 105, 117, 121, 122, 127].  Later in the litigation, the Court also permitted Crown Equipment Corporation ("Crown") to intervene based on an asserted general interest in the AgTech property proceeds arising out of an allegedly breached equipment lease.  [DE 144, 147].

---

[2] VWD's motion to clarify the Amended Receivership Order is pending and is outside of the referral scope. [DE 59].  The issues there raised do not materially impact or preclude approval of the DE 145 sale.

The Court further directed briefing on the then-pending DE 111 motion concerning approval of the Cane Ridge Road sale and the DE 115 motion regarding the sale of certain personal property. The DE 111 briefing demonstrated that, though sale approval was essentially unopposed, several parties objected to automatic distribution of the proceeds directly to Truist upon closing. [DE 129, 130, 131]. Following the conclusion of briefing, the Court conducted a hearing on the Cane Ridge Road sale in February 2022 and recommended shortly thereafter that Judge Wier approve it on specified terms. [DE 117, 140, 142]. No party objected to the recommended approval or terms, and Judge Wier subsequently adopted the recommendation and entered a final order approving the Cane Ridge Road sale on March 7, 2022. [DE 149].

Per DE 149, the Cane Ridge Road sale proceeds shall remain in escrow with the Receiver pending an accounting of proceeds obtained and sums owed, resolution of any objections to the accounting, and a final order directing appropriate distribution of the funds. [*Id.* at Page ID # 1769-70]. The Receiver has complied with DE 149 directive and filed an accounting relative to the Cane Ridge Road property [DE 162], and any party may challenge it or object to the proposed net distribution to Truist within the DE 149-specified time. The Court has also issued a recommendation as to the DE 115 personal property motion [DE 150], which pends and too advocates retention of any proceeds in the Receiver's escrow pending an accounting and final distribution order. No party has objected to the DE 150 recommendation.

Briefing on the DE 145 Cleveland Drive Property sale is now also complete, and the balance of positions largely mirrors the Cane Ridge Road dynamic. EPS and VWD each responded to the sale motion, generally consenting to the sale approval and terms but again opposing automatic distribution to Truist absent an accounting and final order. [DE 153, 154]. Crown

responded similarly but subsequently withdrew its response. [DE 156, 159]. Truist and Aurora each responded or replied in full support of the DE 145 sale motion. [DE 155, 157].

The Court held a hearing on March 21, 2022. Counsel for Truist, VWD, the Receiver, and EPS appeared and participated. [DE 160]. Aurora presented evidence supporting approval of the proposed sale to the backup bidder given the winning bidder's default, as discussed more fully below. The Court heard testimony from Laura Kendall, Senior Managing Partner of Aurora, and Mike Matlat, Senior Management Director A&G Realty Partners, LLC, the broker enlisted by Aurora (the "Broker" or "A&G"). [DE 161]. The Court also received several documentary exhibits supporting the factual findings and legal conclusions underlying sale approval. [*Id.*].

With the record fully developed as to the relevant facts and issues, the Court discusses the evidence supporting sale approval and recommends specific terms governing the process.

## II.    DISCUSSION

The sale of realty and personalty generally is governed by 28 U.S.C. § 2001, *et seq.* Under those provisions, "[p]roperty in the possession of a receiver . . . shall be sold at public sale in the district wherein any such receiver was first appointed," unless the Court directs that the sale occurs elsewhere. 28 U.S.C. §§ 2001(a). "Such sale shall be upon such terms and conditions as the court directs." *Id.*; 28 U.S.C. § 2004 (applying § 2001 to personalty unless otherwise ordered).

The Cleveland Drive Property sale involves only real and no personal property, per the record. Further, because the proposed Cleveland Drive Property sale was public rather than private, it falls under § 2001(a) only and need not meet the more stringent § 2001(b) requirements for private sales. *See also United States v. Scherer*, 532 F. Supp. 3d 485, 489 (S.D. Ohio 2021), *reconsideration denied*, No. 2:19-CV-03634, 2021 WL 2808726 (S.D. Ohio July 6, 2021). However, to comply with the statutory scheme, the public sale still requires "notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of

general circulation in the county, state, or judicial district of the United States wherein the realty is situated." 28 U.S.C. § 2002.

The public sale process in this case complied with the above requirements and was fair and reasonable under the circumstances. As noted, the Receiver had full authority to market the property, facilitate a sale, and execute the related documents on the AgTech Companies' behalf. [DE 45 ¶¶ 3(h), 10]. Based on the evidence before the Court and the lack of contrary argument, the Receiver acted within the scope of its DE 45 authority throughout the entire sale process and in good faith compliance with the Amended Receivership Order's terms. The record further confirms that there are sound business reasons for the proposed sale generally, and the sale is undoubtedly in the AgTech Companies' best interest (given their insolvency), the Receivership posture, and the limited, dwindling credit from Truist that continues to maintain the property.

As DE 45 directs, Aurora engaged an experienced, reputable broker ("A&G") to market the property. [DE 145 at Page ID # 1672; DE 161, Hearing Ex. 8 (outlining A&G's experience & qualifications); *id.*, Ex. 9 (Matlat Bio)]. The Broker conducted a thorough, robust, and successful marketing campaign for the Cleveland Drive Property, as outlined in Exhibit 10 and consistent with Mr. Matlat's testimony at the approval hearing. [DE 161, Ex. 10 (Marketing Campaign Summary)]. No party challenged the Broker's role or efforts in the marketing and sale process. The Broker coordinated a series of brochure and offering memoranda, targeted email blasts, press releases, and combined online and print ads over the course of several weeks to generate interest in the property. [*Id.*; *see also* DE 161, Ex. 11A and 11B (Published Notices of Sale)].

Based on the advertising outlined in Exhibit 10 and as otherwise confirmed in the briefing and per Mr. Matlat's hearing testimony, the Receiver amply complied with (and exceeded) the notice and marketing requirements of § 2002. The Receiver's marketing efforts resulted in two

6

qualified bids, from Bill Harman ("Harman") for $3,000,000, and from Agracel, Inc. ("Agracel") for $3,050,000. [DE 145 at Page ID # 1673]. Both Harman and Agracel participated in the subsequent public auction of the property. [*Id.*].

The public outcry auction conducted in this case satisfies all § 2001(a) requirements per the record. It occurred on February 17, 2022, at the law office of Truist's counsel, Dinsmore & Shohl LLP, located at City Center, 100 West Main Street, Suite 900, Lexington, KY 40507. [*Id.*]. As this location is in the Eastern District of Kentucky, where the Receiver has been appointed in this matter, it satisfies § 2001(a). *See also United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994) (explaining the importance of the "require[ment] that the property be sold within a reasonable distance of where the property is located in order to bring a better price at the sale"). All interested parties received notice of the sale and participated to the extent desired; parties were permitted to attend remotely as needed. The participants were representatives and counsel for Truist, the Receiver, and the two qualified bidders, Harman and Agracel, with Agracel participating remotely. Both Harman and Agracel understood that each bid submitted was an offer to purchase the Cleveland Drive Property per the terms of the previously submitted Asset Purchase Agreements. [DE 145 at Page ID # 1673-74; DE 161, Ex. 1A (Agracel Asset Purchase Agreement) and 2A (Harman Asset Purchase Agreement)].

Harman opened the auction with a bid of $3,200,000, and the parties engaged in three rounds of bidding before Harman closed at $3,600,000 and Agracel at $3,500,000. [DE 145 at Page ID # 1674]. Harman was thus declared the winning bidder and Agracel the backup (hereinafter "Backup Bidder"). However, following the auction, counsel for Harman advised the Receiver that Harman would not be following through with the sale or increasing his deposit in accordance with his winning bid per the terms of the Asset Purchase Agreement. Accordingly,

7

the Receiver has terminated the Asset Purchase Agreement with Harman and, per the contractual terms, will retain Harman's original $150,000 deposit. [DE 161, Ex. 2B (Agreement for Termination of Asset Purchase Agreement)]. As the hearing testimony confirms, the Receiver will retain that deposit as part of the overall AgTech asset sale proceeds. Given Harman's default and as further discussed on the hearing record, the Receiver seeks approval of the sale to Agracel as Backup Bidder, per the terms of the January 27, 2022, Asset Purchase Agreement previously submitted, as modified by the March 5, 2022, First Amendment to Asset Purchase Agreement reflecting the auction outcome and winning bid. [DE 161, Ex. 1A and 1B; DE 145 at Page ID # 1674-75].

No party challenged this characterization of events, and all parties have agreed that the overall sale process was fair and reasonable and that the record is devoid of evidence of price maneuvering or similar bad faith conduct. Rather, all involved (including the Receiver, the Broker, and all other participants) acted in good faith, within the applicable receivership scope, and in a commercially reasonable manner in conducting the sale. Moreover, critically, the Backup Bid sale price and agreement represents fair value for the Cleveland Drive Property, and Agracel is a good faith purchaser for value. At the hearing, Mr. Matlat specifically testified that, in his professional opinion as a part of the Broker's team, Agracel's $3,500,000 winning bid represents fair value for the Cleveland Drive Property and the entire sale process was commercially reasonable and successful. Mr. Matlat opined that the competition between Harman and Agracel, both qualified bidders, created value for the property and achieved its best price. Again, no party has argued or shown otherwise.

For all of these reasons, given the extent of detailed evidence in support of DE 145 and the Receiver's demonstrated, thorough, and (as all agree) successful sale efforts, the record justifies

granting the motion and making the sale approval findings outlined in the following Section. Further, as the briefing and party positions at the hearing reflect, the parties largely agreed on the sale terms and language proposed by the Receiver in DE 145-6. [*See also* DE 148 (directing responding parties to specifically address any objections to the DE 145-6 proposed sale terms)]. The Court thus adopts them in substantial part and as adapted to the current circumstances, as reflected below. *See* 28 U.S.C. § 2001(a) (providing that the Court must set the sale terms and conditions).

Additionally, in accordance with its § 2001(a) power and consistent with Judge Wier's final order approving the sale of the Cane Ridge Road real property [DE 149], the undersigned again will recommend that Judge Wier slightly alter the Receiver's and Truist's proposal to distribute the net sale proceeds to Truist directly, automatically at closing and without further accounting or order. Instead, the more measured and equitable course under the circumstances would be to direct that the proceeds remain with the Receiver, in escrow, pending delivery of an accounting to all interested parties and a subsequent Court directive authorizing distribution of the funds on appropriate terms. Such accounting should, at a minimum, reflect the total proceeds earned from the sale, the various fees taken from it pursuant to the receivership arrangement (including the Receiver's fee, Broker's fee, etc.), resulting net proceeds for distribution, and some documentation of the total sums actually owed to Truist under the various obligations and relevant legal standards.

Though no party appears to dispute Truist's lien priority, even absent such a priority challenge, the involved entities (including EPS) fairly seek a formal, final accounting of the proceeds, fees taken there from, and the amounts actually owed to Truist under the various loan obligations prior to distribution in order to appropriately protect their clients' interests. Given the

9

several and varied interests asserted in this matter in relation to the overall body of AgTech property proceeds, as well as the scope and monetary value of this real property sale, formal documentation of the net proceeds in relation to the sums owed to Truist is appropriate prior to final distribution.[3] Nor would such a practice in this case delay the actual sale approval or closing, so there would be negligible prejudice to any party.

Accordingly, the balance of relevant interests, the sale circumstances, and Judge Wier's approach in the parallel Cane Ridge Road sale process here favor retaining the money in the Receiver's escrow pending a final accounting, resolution of any expedited objections thereto, and a Court order directing final distribution on appropriate terms. The undersigned recommends a procedure consistent with those goals. Such a proposed procedure does not impact or alter the recommendation that the District Judge fully approve the Cleveland Drive Property sale itself free of all liens, claims, and encumbrances.

### III. RECOMMENDED FINDINGS AND CONCLUSIONS[4]

Based on the facts and evidence discussed above, the Court **RECOMMENDS** that Judge Wier **FIND** as follows:

1. For the reasons set forth in DE 145, there are good, valid, and sound business reasons for the sale of the Cleveland Drive Property, and the sale has been conducted in compliance with 28 U.S.C. §§ 2001 and 2002.

2. The sale of the Cleveland Drive Property is in the best interest of creditors and the Receivership estate.

3. The sale of the Cleveland Drive Property was conducted with extensive marketing and publicity and in a manner that was commercially reasonable.

---

[3] The record indicates that the net proceeds from the sale may not fully compensate Truist; nonetheless, even without expected objections to the ultimate accounting and proposed distribution, the interested parties in this case are reasonably entitled to documentation of the same to ensure that they are able to fully apprise their clients of the sale outcome and circumstances.

[4] Terms not defined in this Section or elsewhere in this Report and Recommendation shall have the meaning ascribed to them in the DE 145 sale motion.

4. Reasonable and sufficient notice of the Sale Motion was provided to all of the Defendants, all creditors asserting an interest in the Cleveland Drive Property, and other parties in interest who have requested notices in this receivership case.

5. Due and proper notice of the auction for the sale of the Cleveland Drive Property, held on February 17, 2022 (the "Auction") was provided to all creditors asserting an interest in the Cleveland Drive Property and other parties in interest who requested notices in this receivership case, and by sufficient publication in accordance with 28 U.S.C. § 2002.

6. At the conclusion of the Auction, Bill Harman (the "Harman") was selected by the Receiver as having made the highest and best bid on terms acceptable to the Receiver. Agracel, Inc. ("Agracel") was selected by the Receiver as having made the second highest and best bid on terms acceptable to the Receiver.

7. Harman gave notice that he did not intend to complete the purchase of the Cleveland Drive Property and defaulted in his obligations under his Winning Bid Agreement dated February 17, 2022. The Receiver declared Harman to be in default and accepted the Agracel Asset Purchase Agreement dated January 27, 2022, as revised by the increased bid of $3,500,000 per the First Amendment to Asset Purchase Agreement, as the Backup Bid for which the Receiver requested the Court's approval. Both the Asset Purchase Agreement with Agracel and the First Amendment to Asset Purchase Agreement with Agracel (collectively, the "Agracel Agreements") have been filed with the Court and are available in the evidentiary record. [*See* DE 161, Ex. 1A and 1B].

8. The record further establishes that Agracel is a good faith purchaser for value and that the consideration to be paid for the Cleveland Drive Property is fair and reasonable and consistent with the fair value of the Cleveland Drive Property.

9. The sale of the Cleveland Drive Property was conducted pursuant to a fair and equitable public sale process, which culminated in a sale to a financially qualified purchaser interested in purchasing the Cleveland Drive Property, the public having been given a full and fair opportunity to submit bids for the Cleveland Drive Property.

10. The Receiver and Agracel have at all times acted in good faith and in accordance with applicable law. There has been no evidence presented to this Court that the sale price was controlled by any agreement among potential bidders or that any prohibited activity has occurred.

11. The Receiver complied with the requirements of the Appointment Order and 28 U.S.C. § 2001, *et seq.* for the sale of the Cleveland Drive Property in all material respects, and the proposed DE 145 sale merits approval.

12. The Receiver has the full authority and power to execute and deliver the Agracel Agreements and related agreements and all other documents contemplated to perform Seller's obligations thereunder and to consummate the transactions contemplated thereby. The sale of the Cleveland Drive Property has been duly and validly authorized by all necessary action. No other consents or approvals are necessary or required for Receiver to enter into the agreements with Agracel, perform its obligations thereunder, and consummate the transactions contemplated thereby.

Based on these recommended findings, the Court further **RECOMMENDS** that Judge Wier **GRANT** DE 145 and **ENTER** an order of sale to include the following or similar terms (that substantially track the chiefly unopposed DE 145-6 conditions):

1. This Court has jurisdiction over the DE 145 Sale Motion pursuant to 28 U.S.C. § 1331. Venue of this proceeding and the Sale Motion is proper in this judicial district pursuant to 28 U.S.C. § 1408. The statutory predicate for the relief sought herein is 28 U.S.C. § 2001, *et seq*.

2. The relief sought in the Sale Motion is fully justified pursuant to 28 U.S.C. §§ 2001, 2002, and 2004 and the Appointment Order.

3. The transfer of the Cleveland Drive Property to Agracel will be a legal, valid, and effective transfer. The Cleveland Drive Property shall be sold and assigned to Agracel at the Closing, free and clear of all liens, claims and encumbrances of any kind or nature including, but not limited to, any lien (statutory or otherwise), hypothecation, encumbrance, liability, security interest, contract rights, interest, mortgage, security agreement, and tax including, but not limited to, (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claim based on any theory that Agracel is a successor, transferee or continuation of any of the AgTech Companies, and (iv) any leasehold interest, license or other right, in favor of a third party or the AgTech Companies, to use any portion of the Cleveland Drive Property, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown (referred to collectively hereinafter as the "Liens and Claims").

4. The Agracel Agreements and each of the terms thereof and the transactions contemplated thereby, are each hereby APPROVED. The Receiver is authorized and directed to execute and deliver such other documents and take such other actions as may be necessary, desirable or appropriate to effect, implement, and/or consummate the sale of the Cleveland Drive Property to Agracel and all other transactions described in the Agracel Agreements without further application to or Order of this Court.

5. Effective upon Closing, all parties and/or entities asserting or who may assert Liens and Claims against the AgTech Companies are hereby permanently enjoined and precluded, with respect to such Liens and Claims, from: (i) asserting, commencing or continuing in any manner any action against Agracel with respect to the Cleveland Drive Property and (ii) attempting to enforce any Liens and Claims of any kind against the Cleveland Drive Property.

6. The provisions of this Order authorizing the sale of the Cleveland Drive Property free and clear of Liens and Claims shall be self-executing, and neither the AgTech Companies, the Receiver, nor any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale. Without in any way limiting the foregoing, Agracel and the Receiver each is hereby empowered to execute and file releases, termination statements, assignments, consents, cancellations or other instruments to effectuate, consummate and/or implement the provisions hereof with respect to such sale.

7. This Order shall be binding upon, and shall inure to the benefit of, the AgTech Companies, the Receiver and Agracel and their respective successors and assigns. The failure specifically to include any particular provisions of the Agracel Agreements in this Order shall not diminish or impair the efficacy of such provisions, it being the intent of the Court that every provision, term, and condition thereof be and therefore is, authorized and approved in its entirety.

8. The Court shall retain jurisdiction over the AgTech Companies, the Receiver, Agracel, and all parties asserting Liens and Claims and contract rights on or in the Cleveland Drive Property to implement, interpret, consummate and/or effectuate the provisions of this Order, the Agracel Agreements, and all agreements arising out of, related to, or approved pursuant to this Order.

9. Any and all governmental recording offices and all other parties, persons or entities are directed to accept this Order for recordation on or after the Closing as conclusive evidence of the free and clear, unencumbered transfer of title to the real property included in the Cleveland Drive Property conveyed to Agracel at the Closing.

10. Within ten (10) days of Closing, the Receiver shall file in the docket for this case and provide to all interested parties a written accounting of the proceeds from the Cleveland Drive Property sale, the costs and fees taken therefrom (including all closing costs, the obligations to be paid by the Seller under the Agracel Agreements, and the fees due to be paid to the Broker and to the Receiver), the resulting net proceeds from the sale, and the sums actually owed to Truist under the relevant loan and other agreements and per the applicable legal standards.  Any party may challenge the accounting or object to the proposed net distribution to Truist within ten (10) days of its filing.  Upon receipt of such objections or upon expiration of the deadline for so filing, the Court will evaluate and resolve any lingering issues, directing further briefing if and as needed, and order prompt final distribution of the net sale proceeds in an appropriate manner.

11. Upon receipt of sale proceeds at any time, the Receiver SHALL maintain such proceeds in escrow pending delivery of the accounting to be filed pursuant to the preceding paragraph and further orders. The Court will assess the accounting and any objections filed and issue orders directing appropriate distribution of the funds.

12. The reversal or modification of this Order on appeal shall not affect the validity of the transfer of the Cleveland Drive Property to Agracel unless the transfer is stayed pending appeal prior to Closing.

13. This Order shall be effective immediately upon entry

### IV.    RIGHT TO REVIEW

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of that statute. *See also* Fed. R. Civ. P. 72(b). Given the time-sensitivity of the sale approval question, in light of the receivership and the AgTech Companies' insolvency, the parties readily consented to a shortened five-day objection period. Accordingly, within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.

In order to ensure timely and efficient presentation of all DE 145 issues to Judge Wier upon review of this Report and Recommendation, any responses/objections to it should specifically include any suggested alternative terms or phrasing for the final sale order.

Entered this the 25th day of March, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge